The Chief Justice
delivered the opinion of the court.
Plaintiff in error was indicted in Columbia county for murder in the first degree, and upon trial was convicted by the verdict of the jury of murder in the second degree, and sentenced to imprisonment for life “in the State Penitentiary or State Prison.”
A motion for a new trial was made and denied, but the grounds of the motion are not stated in the record.
As to the errors assigned: The first, third and fourth relate to the summoning, qualifications and organization of the grand jury. The rule is that such objections must be taken by motion or plea in abatement before pleading to the indictment. It is not proper ground of a motion for a new trial. Gladden vs. The State, 13 Fla., 623; Burroughs vs. State, 17 Fla.
The second error assigned is that the record does not show that the grand jury was duly sworn, or what oath was administered.
The record shows that the grand jurors were “ empaneled _ and sworn in the following order.” (giving their names) and were charged by the court. Two others not then present, afterwards appeared, and each “was sworn as a grand juror,” and went to the jury room. On the next day “ the grand jury came into court and presented the following indictment.” Then follows the indictment, the caption of which states that the grand jurors, “duly chosen, empanelled and sworn, diligently to inquire and true presentment make.in and for the body of the county of Columbia upon their-do present,” &c.
1 Bishop Crim. Pro., §1171, says: “As to the swearing of the grand jury, the indictment must appear in the record to have been found upon oath. And if the record undertakes to set out the oath, and sets out one which is insufficient in form, it will be ill. But it need not give the form, and if it states that the jurors were duly sworn, not mentioning by what form of words, this will be sufficient.” This is supported by an abundance of authorities cited by Mr. Bishop.
In one of the briefs it is said that the caption of the indictment does not recite that the grand jury “ on their oath present.” The one of this form of words is nQt essential if it appears that the grand jury was duly sworn. It is said, 1 Chitty’s Crim. Law, 334, that if the caption proceed without saying “upon their oath,” the caption will be invalid. The use of these words, however, is intended to indicate that they had been sworn as grand jurors before making the presentment. But not only does the record show that the grand jury was empanelled and sworn, but the caption itself says they were “ duly sworn,” and in the body of the indictment they say, “and so the jur.ors aforesaid upon their oath aforesaid, do say,” &e. This would seem to be abundantly explicit. The question, however, can hardly arise upon a motion to set aside the ver.dict and grant a new trial..
The fifth, sixth and seventh assignments of error are, that the record does not show that the petit jurors were “good and lawful meu,” or that they were duly empanelled and sworn, or that the oath required by law in capital cases was administered.
The record does not show that any question was raised on empanelling the jury as to their qualifications. In 1 Bish. Crim. Pro., §1182, is said upon authority that if the record shows that the jury were duly selected,* empan-elled and sworn, the law will infer that they were good and lawful men.
No objection having been made at the trial, it is too late to object here, as there is no opportunity in the appellate court to correct an error which might have been avoided by ascertaining the qualifications of the jurors when they were called at the trial. Bishop Crim. Pro., §666.
The incompetency must appear or the verdict will not be disturbed. 12 Ela., 151.
As to the oath, counsel for defendant cities 47 Ala., 30, 31, to show that the oath as prescribed by law in capital cases must appear to have been administered. In that case the record showed that an oath different from that prescribed by law was administered, and the court held that it thus appeared that the statutory oath was not taken. The court remarks, however, that “if it were stated that the jury were only sworn according to law, it might be presumed that they were sworn in the form required by -the staute.”
In 2 G. Green's Pep., (Iowa,) 285, the court say in a capital case: “Had their oath contained the substance of this (the statutory form) in any other form, we should, after verdict, have regarded it as sufficient. Or had the record remained silent upon this point, we should have presumed that they had taken the legal oath.” See also 6 Eng., (Ark.,) 465. ‘The record here shows that the jury was “called, empanelled and sworn.” Nothing being said about the form of the oath, but simply that the jury was sworn, it must be presumed, no question being raised in the court below, that they were properly sworn. The record does not show that any error was committed in this respect.
The eighth error assigned is that the sentence is not warranted by law.
The sentence was imprisonment in the “State Penitentiary or State Prison.” The statute in 1868 organized a “ State Penitentiary” for the confinment of convicts. In 1871, (chap. 1835,) and in 1877, (chap. 3033,) the legislature organized the “State Prison,” and xprovided (sec. 1, chap. 3063) that “the word Penitentiary, whenever the same is used in any of the acts of this State as a place of punishment for crime, shall be construed to mean and refer to the State Prison.” There is but one State institution of this character in this State, and there can be no difficulty in determining what is meant by the words of this sentence by the court. The State Penitentiary is the State Prison. The first section of the last act calls it a “ State Prison.” The 22nd section says “ all prisoners shall be delivered to the Adjutant General at the Penitentiary,” &c. The words are used to indicate the same prison or place of confinement. It cannot be said that the sentence is in the alternative.
The errors assigned numbered 10 to 17 inclusive relate to the charge and the instructions asked for by the counsel for defendant.
The act of 1877, chap. 2096, requires of the judge in capital cases, if he charge the jury, to do so in writing, •upon the law of the case, and if the parties or their attorneys present to him instructions in writing upon points of law or exceptions taken, arising on the trial, it shall -be the duty of the judge to declare in writing to the jury his ruling thereupon as presented, and pronounce the same to the jury as given or refused. These charges, and instructions, and rulings, shall be signed and sealed by the judge and by him filed, and form a part of the record in the case, immediately after delivered.
There are among the papers constituting this record what purports to be charge by the judge, and also what purports to be instructions asked for, and upon the most of them the judge has written “given” or “refused,” and *232 signed his name thereto, but without sealing the same. They are certified to by the clerk as though a part of the record.
The statute is a positive requirement of a duty by the judge, as was remarked in the case of Baker vs. The State at the last term. (17 Fla.) It is also there remarked that these omissions are fatal errors, but it ivas not intended to say that advantage could be taken of them without presenting them to this court by exceptions duly taken and authenticated. It is also a fatal error if the judge rule wrong upon a material point to the injury of a party in respect to testimony, its admission, relevancy and effect; but advantage can only be taken of the error by an exception seasonably taken and brought here according to the law and practice of the courts.
The paper called a bill of exceptions here presented is a nullity, because it was no.t prepared and signed in proper time, either during the term or within a time fixed by order of the court. These charges and instructions and the rulings of the judge are not signed and sealed by the judge, and there appears no exception to the omission. As they are not sealed they are not “a part of the record in the case,” and we cannot, therefore, consider them for any purpose except in the instances hereafter noticed. The neglect of the judge may have been error, but without excepting ip due time to his action, or omission to act so that, as in other cases, the judge may have opportunity to correct it, the parties waive any benefit otherwise arising from the error. This is a well-settled and familiar rule of law which we are not at liberty' to violate in any instance. The questions here considered, arising under the act of 1877, are discussed, in the opinion of the court, in the case of the Southern Express Company vs. Van Meter, (17 Fla.,) decided at the present term, and the rule, as there announced, in respect to the omission to sign and seal the charge and instructions, is adopted and intended to be applied here.
The eighth section of chapter 138, laws of 1848, is repealed by the act of 1877. That section declared it to be error for which a writ -of error might be prayed, as right, if the judge omitted to charge a jury in writing and to file his charge in tile case. The absence from the record of a charge signed by the judge, (a* charge having been made,) was, under that section, evidence of error, for which a judgment might be reversed. The omission of such a provision from the act of .1877 shows that the Legislature did not intend that the rule should apply under the latter act, but that the ordinary rule of law in respect to errors and exceptions should apply to’all cases. Parties are precluded by the absence of exceptions to the omission from proposing .such exceptions upon a writ or error here. Upon examining them of our own motion we do not discover that the instructions given could have operated to the prejudice of the defendant at the trial.
It is evident, by a memorandum signed by the judge, that the defendant excepted to tlie refusal of 'the judge to give an instruction tendered in respect to the right of self-defense and repelling force by force; but we find that the judge did give the substance of the instruction in the same paragraph.
Another exception was taken to an instruction in respect to previous malice proved, and the presumption that the final act might be referred to it in ascertaining the motive; and the influence of evidence that the killing was upon a sudden provocation to destroy the legal presumption of continuing malice. We do not think that the judge erred in giving the instruction as it appears in the record. Thei material substance of it is in accord with approved authorities.
The eighteenth error is that the-defendant was arraigned and pleaded to the indictment after the jury was sworn. There is an entry in the record showing an arraignment and a plea of not guilty before the jury was empanelled.
The nineteenth and twentieth errors alleged are that the judge over-ruled a motion for a new trial, and that a verdict of murder in the second degree was not warranted by the evidence.
The grounds of the motion for a- new trial are not stated in the record, and we cannot, therefore, say that there was error in denying it upon the ground upon which it was moved.
Whether the evidence was sufficient to warrant a verdict of murder in the second degree we cannot determine, as the evidence is not properly before us. One of the counsel for plaintiff in error urges that a verdict of murder in the second degree cannot be supported under an indictment for murder in the first degree. Murdei* in the first degree, properly charged, includes every grade of homicide. The degree of the offense, or whether the homicide is justifiable or excusable, depends upon the evidence, and is to be determined by the jury.
Mr. Phillips says “it is an universal principle which runs through the whole of the criminal law that it will be sufficient to prove so much of the indictment as charges the defendant with a substantive crime.” 1 Ph. Ev., 202, 7 London ed., and see People vs. White, 22 Wend., 167, 176; People vs. Enoch, 13 Wend., 159; 9 Cal., 576; 1 Ga., 222; 6 Miss., 730; 5 Mo., 497; 6 Id., 231; 30 Id., 13; 1 Parker, Cr. R., 182; 3 Humph., 25.
It is said that there is no statute of this State authorizing á verdict of murder in the second degree when the indictment charges a murder in the first degree.
The staute of Hew York, at the time of the decisions just cited, was identical with our law defining the different degrees of murder. But we have a statute which expressly authorizes such a verdict. It provides that “whenever any person indicted for a felony shall; on trial, be acquitted by verdict of part of the offense charged and convicted of the residue thereof, such verdict may be received and recorded by the court, and thereupon the person charged shall be adjudged guilty of the offense, if any, which shall appear to the court to be substantially charged by the residue of such indictment, and shall be sentenced and punished accordingly.” Section 7, sub-chapter XIII., chapter 1637, laws 1868.
This indictment charges a murder with malice, &c., and with a premeditated design to effect the death, &c., being murder in the first degree. Murder in the second degree is' a killing by an act imminently dangerous to others, &c., without a premeditated design to effect the death of any particular individual. Thus, of necessity, the degree of homicide is to be determined by the evidence in the particular case. If, by the evidence, there is nothing to satisfy the jury that there was a premeditated design to effect death, and they are convinced, and find that the accused committed the homicide under circumstances and with the animus mentioned in the statutory description of murder in the second degree, the effect is to acquit of the higher grade of the offense, and of all the elements charged in the indictment indicating the higher grade of homicide.
The judgment must be affirmed.
The plaintiff in error then filed a petition for re-hearing, which is as follows:
To the Honorable,the Chief Justices and the Associate Justices of the Supreme Court:
Your petitioner, Gottsclialk Potsdamer, the above-named plaintiff in error, by John T. Walker of counsel, humbly *233 petitions the court to grant to him a re-hearing upon the fololwing assignments of error heretofore made by him:
1. The assignments numbered from 9 to 11, both inclusive, and the assignments numbered 14, 16 and 17, all being upon the ground of the omission of the presiding judge in the court below to observe, in various particulars, the requirements of chapter 2096, of the laws of Florida.
And your petitioner, by his counsel, respectfully submits that, owing to the circumstance of the cause not having been argued orally by the Attorney-General at the time it was submitted, and to the further circumstance that the Attorney-General afterward submitted an able and elaborate argument in writing, which was not seen by your petitioner’s counsel until after the opinion of the court had been pronounced, and so was not replied to; the various questions arising upon the above-mentioned assignments have not been fully discussed on both sides. Wherefore, your petitioner craves leave to observe that it was assumed by Ids counsel at the hearing that what purports, in the transcript on file, to be charges given by the court, and charges prayed for by counsel, were such indeed, and were part of the record in the lower court. They are so treated by the learned Attorney-General in his written argument for all purposes; but, in the opinion of the court, page 7 of the manuscript, that they are not parts of the record because they are not sealed.
Your petitioner begs that your Honors will notice that the transcript of the record, does affirmatively and sufficiently show that charges were given by the judge, on the authority of Long vs. State, 11 Fla., 299; and see 9 Fla., 517; Guggan vs. State, 8 Fla., 19; Id., 33; 16 Ohio St. 348.
But if any charges were given they must, this being a case of felony, punished capitally^, under chapter 2096, have been wholly in writing, and have been filed in the case and have thus become a part of the record. If they were delivered to the jury -from the bench, they were, it is respectfully submitted, charges, and they must have guided the jury to their verdict. The failure to sign and seal them, or to endorse the ruling thereupon, lessened not their effect upon the jury. The jury thus having them, and being influenced by them, it is the right of your pétitioner to have them reviewed by this honorable court; and the statute has prescribed the modo of authenticating them, that is, by making it one of the duties of the judge to file them in the case. Surely his failure to perform 'the other duties of signing and sealing could not cure the more serious error of failing to perpetuate them by making them, in the mode prescribed, parts of the record. The omission to seal or to sign is, we contend, simply a violation of that one of his duties which needs not to be performed until after the jury has received the charge from the bench, and its effect for weal or woe to the defendant has been expended upon the auditors in the jury box — a duty over which the defendant could exercise no control, and the omission of which he might not be apprised of (as was the fact in this case) until after the charge would be filed and had become a part of the record, when it would be too late, as well as useless, to take any exception.
Exceptions, according to all the authorities, must be taken at the time the thing sought to be excepte^ transpired, and always before the retiring of the jury; but the jury always retire as soon as the instructions are received, when, also, under the statute, they must be immediately filed.
In the case of the Southern Express Company vs. VanMeter, at the present term, it was distinctly held that the charges may be filed and become part of the record though not signed and sealed.
If, however, though filed in fact and hence certified as part of the record, and bearing all the other evidence, such as signing by the judge and having his ruling endorsed on some of them, they cannot be treated as part of the record; then, as enough does appear to show that charges were in fact given, there appears by the record the violation of every duty — the reducing of the charges to writing, the signing, the sealing, the failure to' endorse, and the failure to file.
But it is said these several matters cannot be availed of for the first time m the appellate court; they should have been excepted to in the court below, and brought to this court by bill of exceptions. AVc again reply that we could not know that what the law required the judge — not the defendant to make part of the record — was omitted by him until we liad inspected the record, and then it would be too late.
We further respectfully and confidently urge (1) that there is no such thing in felonies — certainly not in a case involving life — as a waiver, by the silence of the defeiidant, of valuable rights secured to him; not by a mere rule of court devised for convenience in the administration of justice and so largely under the control of the court, the creator, but by the law of the land; (2) that it is not the function of exceptions to warn the court against error or to guard the judge against a failure to do duty, and that the sole office of a bill” of exceptions is to make matters which are extrinsic or " or- out of the record a part of the record,” (21 Ill., 45); in which case it is further observed, that "it should be well understock that a bill of exceptions is not necessary in any case where the error is intrinsic, appearing on the face of the record.” So, it is only because, generally, charges of the court cannot otherwise be got into the record, exceptions are necessary to brjng them before the reveiwing tribunal. Insurance Company vs. Lanier, 5 Otto, 171, and see 1 Fla., 64 and 81; 5 Fla., 466, 470.
But in Florida, as was said in Dixon vs. State, 13 Fla., 651, **the charge of the court is by law a part of the record,” and that "these provisions of the law are plain and positive, a disregard or non-observance of these requirements, particularly in a case of felony, is material error.”
After a somewhat diligent .search we have found but one State having a statute similar to ours, Pennsylvania, and it is there held under a statute that requires the judge who delivers the charge, if either party, by himself or counsel, requests him to do so, to reduce his charge "to writing and file the same of record in the causef" and in construing other statutes similar to ours that the only reason of introducing the bill of exceptions was that the opinion excepted to could not. otherwise appear upon the record, " and that it is only because the charges thus become a part of the record that error can be assigned upon them; but that as the statute makes the charges a part of the record exceptions are no longer necessary, though they may be resorted to; so that, if in either of these modes the matter to be reviewed is brought upon the record, the writ of error, which goes to the whole record, brings it, necessarily, into the court, and counsel may come here and assign errors upon any part of the recordand it is our duty to notice them ”
Wheeler vs. Winn, 53 Penn. St., 126, 129, in which the objection was distinctly made to the assignment upon the charges that in the court below "no exception in form was rendered or noted.” This is a very full and instructive case upon the whole subject of bills of exception and writs of error, and has uniformly been followed in Pennsylvania.
Your petitoner humbly asks leave of your Honors to quote as follows from another opinion of the same learned court in Frankstown Township Road, 26 Penn., St. 472, aD appeal from an order confirming a report of road reviewers, the record showing certain irregularities in the proceedings. After pointing out the irregularities, the opinion proceeds: "What is urged in favor of it, (the order,) simply that the plaintiff in error did not complain in the court below. * * *234 When it is said that all irregularities and errors to which exception is not taken in the quarter session will be considered as waived, the court must be considered as excepting such as appear on the face of the record. We are a court of review, to hear and determine all and all manner of plaints, pleas and causes which shall be brought or removed from any other court of this commonwealth; to examine and correct all and all manner of error of the justice, magistrate and courts of the commonwealth in their process, proceedings, judgments and decrees; and'when a citizen, by appropriate process, brings before us a record of an inferior court, and points out a clear error therein, it is difficult to imagine any excuse that will justify us in refusing to correct it. If we say he should have complained in the court below, he may answer as their plaintiff in error did (and aS'We do in the case under consideration), that he had no notice of the proceedings until too -late. But if he answer not at all, or if he say he chose to rely on his writ of error, which is a writ of right, I see not how he is to be denied the justice he demands.”
“Whatever proceedings or facts the law or practice of the court requires to l>e -placed of record or enrolled, constitute and form part of the record.” 1 Blackf., 16 and 40; 1 Bibb, 304.
The Supreme Court of Florida has, too, in more than one instance, considered and reviewed charges that were not excepted to and not presented in any bill of exceptions, and not presenting the evidence of having been given by the judge that is here afforded as to the charges complained of. See Fash vs. Clark and Ferris, 8 Fla., 19; Ib., 31; Ib., 33; and see 5 Fla., 423, 466, 470; 16 Ohio St., 348.
“ The court fully recognize the doctrine that, upon a writ of error, it is its province to look beyond the bill of exceptions and consider errors apparent upon the face of the record.” 5 Fla., 470.
If it were necessary, why, in view of our peculiar statute, might not these charges in favorem vitae, being signed and attested by the judge, which is what gives force to a .bill of exceptions, be treated as in the nature of a bill, in conformity to the suggestion contained in Duggan vs. State, 9 Florida.
Your petitioner prays your honors to observe that he does not except now to all the charges because of error in the propositions of law they announced when given, but he complains here that the record shows error in the omission of duty by the judge; an error, we repeat, that did not and could not appear to us until after the charge had been “filed in the case” and had become “a part of the record.”
Presuming that the jury knew the law, and supposing that they took the charges with them, may they not have disregarded them as not fulfilling the legal requirements?
The true doctrine must be, we venture to suggest, that whenever the record in a case involving the life or liberty of the citizen discloses that an error of any kind has been committed, a new trial must be awarded. His counsel may through inadvertance or ignorance have failed to remark the error at the time of its occurrence, but he should not, therefore, if it can be legally shown to the appellate court, forfeit his life or liberty.
Unquestionably, it seems to us that the failure to perform any duty imposed upon him in the course of a trial for felony, to the performance of which the defendant has a right, is error, and it was altogether unnecessary for the legislature to add such a statement to section 8, chapter 138. Such statement in the act mad.e the omission no more nor no less an error.
Thb authorities referred to in the opinion under, consideration show that error apparent of record may be here for the first time complained- of, e g., where the. oath is set out and appears not to conform to that required by law albeit the defendant sat by, heard it, and took no notice of, or exception to it. So while the general rule is that in order to a review in the higher court of a charge of the-court below touching its correctness, there must have been an exception taken at the time it was delivered to the jury, when by the law the charge cannot otherwise get upon the record. Yet the rule is not universal. See Fash vs. Clark & Ferris, 8 Fla., 16.
If it shall be finally determined that the record does’not show that any charges were given, then your petitioner has great confidence that he will be able to show, by argument and authority, upon a rehearing, that the judgment should be reversed for error in not charging; and now respectfully calls the attention of the court to the language of section 1, chapter 2096 and section 2: “It shall be the duty of the judge presiding to charge the jury * * * and the charge must be ‘only upon the law/ ” and must be in capital cases “wholly in writihg,” and must be “signed and sealed,” and must be “ by 1dm filed m the case and form a part of the record immediately after delivered.”
There is no such language in this chapter as “where the judge charges,” or “if he charges.”
Chapter 138, section 8, revised and repealed by this chapter (2096) did contain such, or equivalent language as that last quoted, and did not make it “the duly of the judge” in all felonies punished capitally “to charge wholly in writing;” but, did, like 2096, confine the charge to the law and provide “'that charges made by judges in all criminal cases shall be * * * filed in the case.” Writs of error being in all cases (criminal) writs of right and going to the entire record and the charge when made becoming part of the record, the latter clause of the said section was unnecessary, and is meaningless, and hence was omitted from chapter 2096, acts.
The court in the opinion under consideration remark, (referring to chap. 138): “ The absence from the record of a charge signed by the judge, a charge having been made, was under that section evideifee of error for which a judgment' might be reversed.” We ask why? and we hazard the answer, because the law required to be written and filed, and made part of the record, and the violation of the law would have been none the less error had not the statute said so, and the statute saying so makes it none the plainer.
These “plain and positive requirements that cannot be disregarded/5 according to Dixon vs. State, supra, have elsewhere been spoken of as “formalities” that may be waived by the parties. Southern Express Company vs. Van Meter. We shall not now question this proposition as applied to civil controversies involving property rights in which individuals alone are interested; but we think it would be applied with great reluctance to a case affecting the life or liberty of a citizen in which, the commonwealth is concerned. But in any case we do not readily perceive how these requirements can be dispensed with more readily than the formalities prescribed touching bills of exception. The requirement of formalities in both instances is created by the same instrumentality — emanates from the same source.
If the judge may, without error, omit one of these requirements or formalities, he may omit them all, and the statute becomes a dead letter.
If the defendant may forfeit his life or his liberty by an implied waiver of one of these formalities or requirements, it is difficult to perceive why he may not thus waive any other “express and positive requirement” or “formality55 prescribed by law; but we know that some of these, e. g.} the arraignment, trial by jury, &c., he cannot in felonies.
If your honors shall grant to your petitioner a rehearing *235 he will not be without faith in his ability to show the court that the evidence incorporated in the transcript ought to be-considered in order to test the correctness of the charges, and to show .that the judgment of murder in the second degree cannot be sustained, and thus enable the court to undo the great wrong to him, and the bringing shame upon the law, of a conviction of having committed a homicide “by an act imminently dangerous to others and evincing a depraved mind regardless of human life although without any premeditated design to effect the death of any particular individual/* upon evidence not even remotely pointed to such an act, but simply showing an encounter with one individual.
Your petitioner submits another reason why his petition should be granted, that the questions to be determined are mostly of first impression in this State, and it is of general interest that they should be finally.’settled upon the largest and most exhaustive consideration.
And your petitioner hopes that it will none the less commend his application to your consideration, if he shall invite your attention to the startling haste and rapidity with which the proceedings in this case were conducted in the court below, as evidenced by the transcript, which may in great measure account for the omissions from the record, which have operated so gravely to his detriment; nor he trusts will he be deemed guilty of an impropriety if he here places upon the record the fact that neither Mr. Har-tridge nor Mr. Walker were of counsel for him in the court below.
And your petitioner humbly begs the pardon of your honors if he has transcended the rule of the honorable court in the matter of the petition, pleading his awful situation caused by circumstances beyond his control, and due, doubtless, so far as his counsel below were concerned, to the haste and excitement attending the conclusion of the trial and the sudden adjurnment o.f the court after the verdict was rendered.
Suppose a case where section 8 had been violated in every respect, and thereupon a writ of error. The fact that the judge charges the .jury need not;appear of record unless reduced to writing &c., and suppose it did ‘ not appear, where would be the evidence of the violation? There would be none. How then could it be made to appear of record? The only way known to the practice would be to have the judge in some way certify it. But this he would not be bound to do, unless exception to his failure had been taken at the time; and then the exception would have presented the error without the aid of the statute..
Errors and exceptions have different technical significations; the one is predicated of the record in the court above, the other goes to matter transpiring in the court below, and is taken to bring the matter on the record for assignment of error, and this is the only office of an exception.
Gottschalk Potsdamer,
By John T. Walker, his Attorney and of Counsel.